■ In the Matter of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property for the College Point Industrial Park, Urban Renewal, Project II in the Borough of Queens. TULLY & DI NAPOLI, INC., Appellant.—In a condemnation proceeding, the claimant appeals from so much of a fourth separate and partial final decree of the Supreme Court, Queens County, entered May 1, 1978, as, after a nonjury trial, awarded it nominal damages of $1 each for Damage Parcels Nos. 236B, 240C and 242B. Decree affirmed insofar as appealed from, with costs. The issue raised in this condemnation proceeding is whether the trial court erred in granting only nominal damages of $1 for each of the three damage parcels in question. These three parcels of vacant land are contiguous and form a 20-foot-wide strip abutting the service road of the Whitestone Expressway, between Ulmer and Downing Streets. While the claimant received substantial awards for other damage parcels in this proceeding, the propriety of those awards are not before this court at this time. The City of New York, in the process of building a large industrial park in the College Point section of Queens, acquired title in fee on December 1, 1972 to a large tract of the claimant's land, including these three damage parcels. It is undisputed that in 1962, while the City of New York was building the service road of the Whitestone Expressway, it obtained a "permanent and perpetual" slope easement over another tract of the claimant's land, also encompassing the identical damage parcels presently at issue. A slope easement, according to expert testimony, is an easement used to "laterally support" a highway grade and here it was designed to insure stability of the service road of the expressway. While the 1962 easement prevented the claimant from building or excavating on the land, the claimant nevertheless had the undisturbed use of the land for the storage of trucks from 1962 to the present. In the subsequent proceeding in the Supreme Court, Queens County (Index No. 36-1962) to compensate the claimant for the damages of the partial taking, the trial court, by decision dated June 25, 1968, granted damages representing the *full fee* taking, and not merely a partial taking for a slope easement. Mr. Justice Conroy, presiding at the trial, noted at that time that "In the computation of compensable damages herein, the Court was actuated by the concept that a permanent and perpetual easement is *equivalent to a full fee taking*" (emphasis supplied). No appeal by the city was taken from the resulting order. In view of the fact that the claimant had been fully compensated during the 1962 partial taking proceedings, the city urged that only nominal damages were recoverable in the present proceeding, i.e., that the claimant is entitled to be compensated only *once* for the identical parcels of land. The trial court essentially agreed with the city's position, stating that notwithstanding the fact that the 1962 proceeding was for a slope easement, it was "akin" to that of a street easement which had left the claimant with "but a naked fee title" and for which it had been fully indemnified (citing *Matter of City of New York [Braddock Ave.]*, 278 NY 163). In the view of the trial court, to grant a second award would operate as "unjust enrichment" to the claimant. The fact that the claimant has had the use of the land in the intervening years was really a mere gratuity or a "windfall". Hence, the claimant was only entitled to nominal damages. Aggrieved, the claimant appeals from the decree insofar as these three

damage parcels are concerned. We agree with the trial court that the claimant is entitled to mere nominal damages, and so we affirm the awards. We do so on slightly different grounds, however. The claimant raises a two-prong argument in urging reversal: (1) The city cannot in any subsequent proceeding seek to *expand* its original 1962 partial appropriation in such a way as to limit its damages (see *Wolfe v State of New York,* 22 NY2d 292, 295-297). That is to say, since all the city applied for in 1962 was a *slope easement,* it cannot be heard to say it received *de facto* a full fee predicated upon an erroneous 1968 trial court award. If there was error, the city should have appealed *then.* (2) Further, since the claimant had access to and undisturbed use of the parcels for truck storage with the slope easements, it consequently retained *some* value, offset by the previous award, which must be compensable today (see *Matter of City of New York [Steinecke],* 47 AD2d 644; *Caggiano v State of New York,* 22 AD2d 1011; *Matter of City of New York [Bruckner Blvd.],* 58 Misc 2d 873, 876-877). The claimant's argument, however, has one fatal flaw: review of the transcript of the trial in the 1962 proceeding indicates that when Mr. Justice Conroy awarded full fee damages for the slope easement, he was relying on the representations of the *claimant,* through its expert appraiser, George Hickey, that "a total destructive value" was warranted. Not only did Hickey testify that he "was instructed by [the claimant's] counsel to proceed on that theory", he "also agreed with it, because * * * the property is not available to the owner's use." Evidently, if the trial court erred in awarding excessive damages in 1968, it was only done at the *express* instigation of the claimant. Representations of lack of use constitute informal judicial admissions against that party admissible in subsequent proceedings on the same issue (see *McRorie v Monroe,* 203 NY 426; Richardson, Evidence [Prince, 10th ed], § 217, p 193). Since the continued usefulness of the present parcels was actually litigated in the prior proceeding, and was actually decided in accordance with the claimant's admissions, the claimant is now collaterally estopped from relitigating the issue in the present proceeding, where such is contrary to its original position (see *Gramatan Home Investors Corp. v Lopes,* 46 NY2d 481, 485; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 70-71). Lazer, J. P., Mangano, Cohalan and O'Connor, JJ., concur.